UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BEVERLY GURARA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   10-1556 (RC) |
| | : | |
| v. | : | Re Document No.:   23 |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

The plaintiff is a former employee of the District of Columbia.  Her work record was not ideal: by her own admission, she was repeatedly late, missed several days of work, and failed to attend training sessions.  One day, a co-worker noticed that her paper shredder was filled with remnants of relevant work documents; when asked why this was so, Ms. Gurura lost her composure, throwing a potted plant towards a co-worker and hurling invective which was heard by all within earshot.  She was so agitated that her employers called 911.  Her employers took progressive disciplinary measures, imposing two suspensions without pay for the missed days of work and missed training and, after her outburst, terminated her employment.  The plaintiff brought suit against the District,[1] claiming that the defendant's acts were actually taken in retaliation for a discrimination complaint that she had previously filed.  But she has not

---

[1]   The complaint also names the District of Columbia's Department of Transportation, which is *non sui juris* and may not be sued.  *Plater v. D.C. Dep't of Transp.*, 530 F. Supp. 2d 101, 102 n.1 (D.D.C. 2008).  The court dismissed the Department of Transportation from this suit in a Minute Order dated March 1, 2011.

submitted enough evidence to convince a reasonable jury of her claim.  The court will therefore grant the District's motion for summary judgment.

## II.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Beverly Gurara is a former employee of the District of Columbia's Department of Transportation ("DDOT"), where she worked as a staff assistant.  In August 2007, for reasons not fully explained by the parties, she filed a charge with the EEOC alleging that she had been subjected to a hostile work environment.[2]  Over the next two years, her employer took three actions that are relevant to the plaintiff's case.

### A.  The Plaintiff's Nine-Day Suspension (April 2008)

In April 2008, the plaintiff was suspended without pay for nine days.  Def.'s Mot. for Summ. J. at 5 ("Def.'s Mot."); Pl.'s Mot., Ex. 1 ("Pl.'s Aff.") ¶ 7.  The defendant alleges that Ms. Gurara repeatedly failed to show up to work, claimed dubious medical excuses for her absences, and failed to give timely notice of those absences.  Def.'s Mot. at 5–6.  The plaintiff contends that she was entitled to take accumulated sick and annual leave, Pl.'s Aff. ¶ 7, though the parties differ as to whether she properly obtained permission to use any such leave.

### B.  The Plaintiff's 15-Day Suspension (December 2008)

In December 2008, the DDOT gave Gurara notice that it planned to suspend her for fifteen days without pay due to her poor attendance, tardiness, and missed training.[3]  The defendant cited several specific instances of absenteeism.  First, Gurara failed to attend a "City

---

[2]  The plaintiff was placed on administrative leave in August 2007, but does not allege that this plays any part in her claim.  Rather, she focuses on three events that took place between April 2008 and June 2009.  Pl.'s Opp'n at 1 ("Plaintiff agrees that the claims of retaliation are based on three adverse employment actions: (1) a nine-day suspension in 2008; (2) a fifteen day suspension in 2008; and (3) her termination from employment in 2009.").

[3]  The plaintiff appealed this decision internally; it was affirmed three years later.  *See* Def.'s Mot. at 6, 11; *id.*, Ex. 13.

Works training" on October 14–16, 2008, and a "snow training" that occurred in the same month. Def.'s Mot. at 8–9. Additionally, she was late for work on October 21 and 22, and she failed to show up at all on October 27 and October 28, 2008. *Id.* at 7, 10. Although the plaintiff admits that the defendant is correct, she claims that others similarly failed to attend the City Works training, and that she was unaware that her presence at the snow training was required. Pl.'s Aff. ¶¶ 10, 11. She also claims that other employees were commonly late to work, and those employees did not suffer similar consequences. *Id.*

### C.  The Plaintiff's Termination (June 2009)

In June 2009, Gurara entered a colleague's office to find her paper shredder on his desk. Def.'s Mot. at 13. The colleague—Francesco Pacifico, the DDOT's Chief of Street and Bridge Maintenance—states that he was "trying to figure out" why her shredder was filled with ribbons of certain work documents. *Id.* She denied shredding any original documents, instead maintaining that she had only shredded photocopies. *Id.* When Pacifico showed her slivers of paper with original ink and highlighting, she responded, "[t]his is bulls--t. You're accusing me," and asserted that the shredded documents were merely photocopied duplicates. *Id.* Gurara returned to her desk and, in the presence of other employees, said, "[i]f I wanted to shred f---ing [work order] tickets, I could have did that a year ago when they put me on this bulls--t [sic]." *Id.* at 14–15. She began to curse and talk to herself, repeating, "I can't believe this s--t." *Id.* She picked up the phone, saying: "I'm sick. I'm going crazy," and "you need to come over here right now" before slamming down the telephone. *Id.* She tossed the shredded tickets in the air and stated, "f--- that s--t." *Id.* at 15. Gurara then swiped various items from her desk, seized a flower pot, dumped its dirt onto the floor, and catapulted the pot across the room (it narrowly missed a coworker before landing). *Id.* Her coworkers called Pacifico, who arrived to see Gurara with her head cradled in her hands. *Id.* Pacifico called 911. *Id.* When the ambulance arrived, Gurara

refused to speak with the medics and stormed out. *Id.* at 15. She was fired soon thereafter. *Id.* The plaintiff does not contest this factual account except to insist that she never shredded any original documents, only photocopies. Pl.'s Aff. ¶ 17.

The plaintiff brought suit in September 2010, alleging three claims: (1) retaliation under Title VII of the Civil Rights Act of 1964, (2) retaliation under the D.C. Human Rights Act, and (3) age discrimination under the Age Discrimination in Employment Act. The defendant seeks summary judgment on all three counts. In her opposition, the plaintiff indicated that she no longer wishes to pursue Counts II and III of her claim. *See* Pl.'s Opp'n at 1 n.1.

### III. ANALYSIS

#### A. Legal Standard for a Motion for Summary Judgment

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial responsibility of identifying those portions of the record which demonstrate the absence of any genuine issue of material fact. *Id.* at 323; FED. R. CIV. P. 56(c)(1)(A) (noting that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials"). In response, the non-moving party

must similarly designate specific facts in the record that reveal a genuine dispute that is suitable for trial. *Celotex*, 477 U.S. at 324.

On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. Legal Standard for a Title VII Retaliation Claim

Title VII prohibits an employer from retaliating against any employee who files a discrimination charge against his or her employer. 42 U.S.C. § 2000e–16(a); *Ginger v. District of Columbia*, 527 F.3d 1340, 1346 (D.C. Cir. 2008). An act of retaliation gives rise to liability if it is of sufficient significance that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. v. White*, 548 U.S. 53, 68 (2006). Where, as here, the employer has proffered a non-retaliatory explanation for a materially adverse employment action, the "central question is whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted reason was not the actual reason and that the employer intentionally retaliated against the employee." *McGrath v. Clinton*, 666 F.3d 1377, 1383 (D.C. Cir. 2012) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)) (alterations omitted). The court is obliged to weigh the entirety of the evidence and to determine whether the plaintiff's evidence creates a material dispute of fact on this question. *Brady*, 520 F.3d at 495. And a plaintiff has "multiple ways" to cast doubt on the employer's asserted reason for acting: for instance, the plaintiff may draw comparisons to others similarly situated, submit evidence suggesting that the employer has lied about the underlying

5

facts, or suggest the employer failed to follow established protocol or procedure. *See id.* But a plaintiff cannot succeed merely by demonstrating that the employer's asserted reason was faulty or erroneous; to prevail, the plaintiff "must show *both* that the reason was false, *and* that [retaliation] was the real reason." *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007).

### C.  The Plaintiff's Nine-Day Suspension Was Not Unlawful Retaliation

The plaintiff alleges that her nine-day suspension was imposed as a form of retaliation for her filing of an EEOC charge the previous year. Pl.'s Opp'n at 1–2. The defendant counters that the plaintiff was suspended because she failed to show up to work. Def.'s Mot. at 5–6. The plaintiff was placed on a period of administrative leave that was due to end on February 4, 2008. *Id.* at 6. She was initially expected to return to work that day. *Id.* But, based on a doctor's note, the plaintiff claimed that she could not return until February 19, 2008. *Id.* On that date, the plaintiff left a voicemail with a supervisor at some point after 2:00 o'clock in the afternoon, indicating that she would not be showing up to work. *Id.* The plaintiff left a similar voicemail the following day (February 20, 2008), again informing the supervisor that she would not be attending work that day. *Id.* On February 26, the plaintiff faxed a "questionable medical document" (dated February 12, 2008) to another employee, which indicated that she was under a doctor's care and could not attend work for medical reasons. *Id.*

Absenteeism is, without doubt, a legitimate, non-retaliatory reason for taking action against an employee. *See McGill v. Munoz*, 203 F.3d 843, 846 (D.C. Cir. 2000); *Short v. Chertoff*, 555 F. Supp. 2d 166, 176–77 (D.D.C. 2008) (noting that the plaintiff's absence without leave was valid grounds for suspension). And the defendant argues that the plaintiff did not follow the relevant procedures before taking medical leave, nor did she provide adequate evidence that medical leave was warranted. Because the defendant has offered a valid justification for Gurura's suspension, the only question is whether there is enough evidence for a

reasonable juror to determine that this justification is pretextual. *Geleta v. Gray*, 645 F.3d 408, 411 (D.C. Cir. 2011).

The plaintiff suggests that the defendant's stated reason for acting is false. The plaintiff claims that she had valid medical reasons for her absences, and that she had 350 hours of annual leave and 84 hours of sick leave at her disposal. Pl.'s Opp'n at 4. But this argument misses the point. Regardless of the plaintiff's purported medical condition or her available leave, the plaintiff does not explain why she failed to properly request such leave. A workplace Collective Bargaining Agreement required the plaintiff to give advance notice of any absences, either (1) when the employee becomes aware of the need for leave or (2) at the latest, two hours before the scheduled start of her tour of duty. Def.'s Mot. at 6. Based on the plaintiff's own paperwork, the plaintiff was under a doctor's care beginning no later than February 12, 2008. Pl.'s Opp'n at 4. Accordingly, there was no reason she could not request leave well in advance of her absences on February 19 and 20. But she did not do so. Instead, the plaintiff did not inform her supervisors of her necessity for leave until hours after her scheduled start time. Thus, even if the plaintiff had leave time available, there is no evidence to indicate that she properly obtained permission to use that leave. Accordingly, the plaintiff's arguments do not cast doubt on the defendant's reason for acting.[4] The court therefore concludes that no reasonable jury could find that the

---

4     Although the plaintiff does not press this point, the proximity in time between the EEOC charge and the adverse employment action may give rise to an inference of retaliation depending on the facts of the case. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) ("For purposes of establishing a prima facie case of retaliation, temporal proximity can indeed support an inference of causation, but only where the two events are very close in time."). Here, the suspension was proposed in March 2008, six months after the EEOC charge was filed. *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing cases finding that a temporal proximity of three months and four months is insufficient to demonstrate causal connection). But regardless, temporal proximity alone cannot defeat summary judgment when confronted with the employer's legitimate, non-retaliatory reason for acting. *See Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) (concluding in an ADA retaliation claim that "positive evidence beyond mere proximity is required to defeat the presumption that the [defendant's] proffered explanations are

District's stated reasons for suspending the plaintiff are merely a guise to mask unlawful retaliation.

### D. The Plaintiff's 15-Day Suspension Was Not Unlawful Retaliation

The plaintiff similarly claims that her 15-day suspension in February 2009 was a form of unlawful retaliation. Pl.'s Opp'n at 2–3. The defendant claims that the plaintiff was suspended because she failed to attend two training programs, arrived at work late, and missed two days of work entirely. Def.'s Mot. at 7–10. Specifically, the defendant argues that the plaintiff failed to attend "snow training" on October 11, 2008; that she failed to attend the "City Works" training program from October 14 to October 16, 2008; that she was thirty minutes late to work on October 20 and October 22, 2008; and that she did not show up to work on October 27 and October 28, 2008. The defendants' offered reasons are valid under Title VII: an employer may punish its employees for failing to show up at work functions, showing up late, or not showing up at all. *McGill*, 203 F.3d at 846; *Singleton v. Potter*, 402 F. Supp. 2d 12, 31 (D.D.C. 2005) (noting that "attendance issues" are legitimate grounds for action). Thus, it falls on the plaintiff to show that this justification is pretextual.

The plaintiff concedes that she did not attend the City Works training in the fall of 2008. Pl.'s Opp'n at 2; *see* Def.'s Mot., Ex. 13 at 184 ("Q. Did you attend the [City Works] training? A. No."). The plaintiff nevertheless maintains that other employees failed to attend the City Works training without suffering any reprisal and that she attended the training at some later point in time. Pl.'s Opp'n at 2. It is true that the plaintiff may prove retaliation by introducing evidence suggesting that other employees who failed to attend the training received more lenient

---

genuine"); *Hutchinson v. Holder*, 815 F. Supp. 2d 303, 318 (D.D.C. 2011) (reaching the same conclusion in a Title VII case).

treatment. *See Brady*, 520 F.3d at 495. But the plaintiff does not specify which employees failed to attend the training, whether they were similarly situated, or what consequences they may have suffered. Pl.'s Opp'n, Ex. 1 ¶ 10 ("To my knowledge, no other employee received adverse action for failing to attend the training as initially scheduled."). In addition, the plaintiff was not suspended for just missing this training; she committed a host of other infractions as well. The plaintiff does not indicate whether any other employees also committed similar infractions. Thus, the plaintiff fails to demonstrate that these purported comparators were similarly situated to her. *See Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 145 (D.C. Cir. 2008) (indicating that the defendant's disparate treatment of similarly situated employees may establish pretext, but only if the plaintiff shows that "all of the relevant aspects of [her] employment were nearly identical") (quotation marks and alterations omitted). Therefore, the plaintiff's argument does not create a triable issue of fact. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (noting that conclusory, unsubstantiated allegations are insufficient to defeat summary judgment); *Mason v. Geithner*, 811 F. Supp. 2d 128, 181 (D.D.C. 2011) (noting that a "cursory allegation may suffice in a complaint, but it is patently insufficient to create a genuine dispute necessitating trial").

      Second, the plaintiff admits that she did not attend the snow training in October 2008, yet she maintains that she was unaware that her attendance was required. Pl.'s Opp'n, Ex. 1 ¶ 11. But the defendant has submitted the plaintiff's testimony to the contrary. *See* Def.'s Mot., Ex. 13 at 187 ("Q. Were you aware that you were to attend a snow training on October 11th? A. Yes. Q. So why didn't you attend the training? A. Well, I don't know.").[5] In addition, she states that

---

[5] To the extent that her prior statements consist of sworn testimony, the plaintiff cannot create a question of fact by submitting an affidavit that contradicts her previous statements. *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (explaining that the "sham affidavit" rule "precludes a party from creating an issue of material fact by contradicting prior sworn testimony

she did not attend the snow training because she lacked a means of transportation. Pl.'s Opp'n, Ex. 1 ¶ 11. But the plaintiff's allegations, even if true, would not excuse her absence. The defendant submits evidence suggesting that employees were responsible for getting to training on their own, or requesting a ride if needed. Def.'s Mot., Ex. 13 at 101–02. The plaintiff puts forth no evidence to the contrary nor evidence that she attempted to arrange a ride to the training. In sum, the plaintiff's second argument does not create a genuine dispute of material fact.

Third, the plaintiff argues that she requested approval for her absence on October 27 and October 28, 2008 by calling in on the day of her absences. Pl.'s Opp'n, Ex. 1 ¶ 12 ("With respect to the AWOL, I attempted to call in to advise that I would not be in for work. I was unable to reach a supervisor and left a voicemail message."). But, in order to constitute an excused absence, the plaintiff needed to obtain approval of her absence in advance. She did not do so. Although she may have attempted to notify her supervisor of her absence, she did not obtain approval for such leave in advance. Def.'s Mot., Ex. 13 at 34–35.

Finally, the plaintiff argues that her tardiness should be excused because "it was common in my office for other employees to miss work or come to work late. To my knowledge, no adverse action was taken against them and I was singled out." *Id.* ¶ 13. Again, this allegation lacks sufficient detail and evidentiary support to warrant trial. *Greene v. Dalton*, 164 F.3d at 675; *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 45 n.6 (D.D.C. 2008) (finding that a plaintiff's description of work procedures consisted of mere allegations rather than genuine facts because the descriptions were unsupported by any citation to evidence in the record). As set forth above, the plaintiff was suspended for a number of infractions and she has failed to identify any similarly situated co-workers who were treated differently despite committing a number of

---

        unless the shifting party can offer persuasive reasons for believing the supposed correction is more accurate than the prior testimony").

infractions (rather than the occasional late arrival to work). Accordingly, the plaintiff's claim that her 15-day suspension was a form of unlawful retaliation cannot proceed to trial.

### E.  The Plaintiff's Termination Was Not Unlawful Retaliation

Finally, the plaintiff alleges that her termination was retaliatory. The defendant argues that the plaintiff was fired for insubordination, malfeasance, and the use of abusive or offensive language. Def.'s Mot. at 15–16. It goes without saying that these reasons are a legitimate basis for disciplinary action. *See Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 5 (D.D.C. 2000) (concluding that the plaintiff's "insubordination," as well as her "rude and abrasive behavior," were grounds for her termination). The plaintiff's sole response is to argue that the documents she shredded were not originals, but instead were photocopies. Pl.'s Opp'n, Ex. 1 ¶ 16. But even if the plaintiff is correct, the plaintiff has not demonstrated that Mr. Pacifico did not honestly believe that, based on the original ink and highlighted areas of the shreds, someone had shredded the originals. And if the employer honestly believes in the correctness of the conclusions that form the basis for its actions, those acts will not constitute unlawful retaliation. *See Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Once the employer has articulated a non-discriminatory reason for its action . . . . the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." (citing *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992))) (alterations omitted); *Mentzer v. Lanier*, 677 F. Supp. 2d 242, 260 (D.D.C. 2010) (same). Regardless, the plaintiff does not contest that she lost her composure, used vulgar language, and hurled a flower pot towards her co-workers. Based on these facts, no reasonable juror could conclude that the plaintiff's termination was pretextual.

## IV.  CONCLUSION

Summary judgment "serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial."  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).  Here, the plaintiff alleges that every disciplinary action taken after her EEOC charge was retaliatory.  But Title VII's retaliation provisions are "intended to protect the remedial scheme," not to "create a permanent discipline-free zone for complainants."  *See Woodruff v. Peters*, 482 F.3d 521, 531 (D.C. Cir. 2007).  And the defendant should not suffer through a trial absent any evidence for the jury to rely on.  Accordingly, the defendant's motion is granted.  An order consistent with this memorandum opinion is separately issued this 8th day of August, 2012.

RUDOLPH CONTRERAS
United States District Judge